UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRESSER, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 1957 |
| v. | ) |
| | ) Judge Rubén Castillo |
| VRG Controls, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Dresser, LLC ("Plaintiff") brings this lawsuit against VRG Controls, LLC ("Defendant") alleging infringement of U.S. Patent No. 8,141,843 (the "'843 Patent"). (R. 48, Second Am. Compl. ¶¶ 7-32.) Defendant filed a counterclaim alleging that the '843 Patent is invalid, (R. 71, Countercl. ¶¶ 10-20), and Plaintiff, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Defendant's counterclaim of invalidity. (R. 81, Mot. at 1-2, 6-10.) For the reasons set forth below, Plaintiff's motion is denied.

## BACKGROUND

On March 27, 2012, the U.S. Patent and Trademark Office ("USPTO") issued the '843 Patent, which relates to a valve that controls or regulates the flow of fluid, such as natural gas. (R. 48, Second Am. Compl. ¶¶ 7-8; R. 48-1 at 13, 19-21, '843 Patent.) The invention disclosed in the '843 Patent uses a "throttling ball"—a spherical structure in the middle of the valve—and various other components that regulate fluid pressure in way that reduces vibration, turbulence, and shear associated with poorly-regulated fluid flow. (R. 48-1 at 13, '843 Patent.)

In one exemplary embodiment of the '843 Patent depicted in Figure 1 of the patent below, a valve regulates a fluid coming into the valve, and the valve has a stem (item 105) and a

plate (item 115) to connect the valve to another mechanical device that can open or close the valve. (*Id.* at 15.)



FIG. 1

Within the body of the valve (item 125) is a throttling ball (item 145) through which fluid is directed when the valve is open. (*Id.* at 16.) The throttling ball is the chief component of the valve that regulates fluid pressure, as it reduces the pressure of fluid flowing through the valve in one or more stages. (*Id.*) It operates by rotating, which either opens or closes the throttling ball for fluid to pass through in a controlled manner. (*Id.* at 17.)

An embodiment of the throttling ball disclosed by the '843 Patent is depicted in Figure 3A of the patent below:

FIG. 3A



There is a flow conduit (item 267) inside the throttling ball that allows fluid to pass through the ball, and the flow conduit may be opened or closed when a solid surface (item 232) is rotated to cover the conduit. (*Id.*) Within the throttling ball are channels (item 274) separated by plates (items 240 and 270) with openings (items 272 and 245) that further regulate the pressure of fluid passing through the throttling ball. (*Id.* at 17-18.) Ultimately, the throttling ball operates by using multiple stages of pressure regulation and channels of flow to reduce vibration, turbulence, and shear. (*Id.* at 18-19.)

Consistent with the figures shown above, the '843 Patent's claims generally describe "a valve comprising: a body" with a "flow passage" and an interior cavity containing a "throttling ball," which includes a "fluid conduit extending through the throttling ball[.]" (*Id.* at 19.) The

'843 Patent also claims methods of regulating fluid pressure using the valve and throttling ball apparatus disclosed in the '843 Patent. (*Id.* at 20-21.)

Before the USPTO issued the '843 Patent, the inventors of the '843 Patent, Vladimir Rimboym ("Rimboym") and Vladimir Etinger ("Etinger"), allegedly assigned the rights to the '843 Patent to Plaintiff. (R. 48, Second Am. Compl. ¶ 7.) Plaintiff manufactures and sells valve products that incorporate the inventions disclosed in the '843 Patent, which Plaintiff markets under its "Becker" brand. (*Id.* ¶ 10.) For many years, Rimboym had allegedly worked for a corporation that was ultimately acquired by Plaintiff, but Rimboym is now the Chief Executive Officer ("CEO") of Defendant. (*Id.* ¶ 11.) Defendant has also allegedly employed several former employees of Plaintiff. (*Id.*)

Plaintiff claims that Defendant manufactures and sells valves described as "Pipeline Rotary Control Valves" ("PRCV") that infringe the '843 Patent, and that Defendant induces as well as contributes to infringement of the method claims in the '843 Patent. (*Id.* ¶¶ 12, 21-32.) Plaintiff alleges that Defendant has sold and manufactured its PRCV product knowing about the '843 Patent and knowing that Defendant induces its customers to infringe claims of the '843 Patent. (*Id.* ¶¶ 25-27.)

According to Plaintiff, Defendant's products are manufactured in Italy, but Defendant represents on social media websites that its products are manufactured in the United States. (*Id.* ¶¶ 13-19, 36-37.) Plaintiff alleges that these representations "actually deceived or have the tendency to deceive" customers who have seen Defendant's social media, and that Defendant's "deception is material because it is likely to influence the purchasing decision of . . . customers[.]" (*Id.* ¶ 38.) Plaintiff also claims that Defendant has falsely disseminated materials stating that Defendant's products are more durable than Plaintiff's products, and Plaintiff further

avers that Defendant's products are the only products that compete with Plaintiff's products. (*Id.* ¶¶ 20, 39-41.)

## PROCEDURAL HISTORY

On March 19, 2018, Plaintiff filed a complaint for patent infringement against Defendant. (R. 1, Compl.) Plaintiff eventually filed its second amended complaint on January 16, 2019, which is the operative complaint. (R. 48, Second Am. Compl.) Plaintiff brings three counts against Defendant: one count for patent infringement (Count I); one count for false advertising and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); and one count for violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/1 *et seq.* (Count III). (*Id.* ¶¶ 21-50.)

On January 29, 2019, Defendant filed a third-party complaint against Valpres S.r.L. ("Valpres"), who Defendant alleges is "an Italian limited liability company" that warranted the PRCV products do not infringe any patent. (R. 62, Third-Party Compl. ¶¶ 2, 8-20.) Defendant's third-party complaint also alleges that Valpres must indemnify Defendant for any liability arising from Plaintiff's infringement lawsuit. (*Id.* ¶¶ 21-27.)

Defendant filed its answer and counterclaim against Plaintiff on February 19, 2019. (R. 71, Answer & Countercl.) Defendant claims that the '843 Patent is invalid, and that Plaintiff is wrongly asserting the '843 Patent against Plaintiff and its customers. (*Id.* at 17-19.) Among other forms of relief, Defendant seeks declaratory relief finding that the '843 Patent is invalid. (*Id.* at 19.)

On March 12, 2019, Plaintiff filed a motion to dismiss Defendant's counterclaim of invalidity. (R. 81, Mot.) Plaintiff argues that because Defendant's founder and CEO, Rimboym, assigned the '843 Patent to Plaintiff, Defendant is estopped from asserting that the '843 Patent is

invalid. (*Id.* at 1-2.) In support of the motion to dismiss, Plaintiff attaches a declaration from Rimboym, which Plaintiff argues can be considered at the pleading stage because it is subject to judicial notice as an exhibit to another motion filed in this case. (*Id.* at 5; *see also* R. 81-1, Rimboym Decl.) This declaration was originally attached to a motion for sanctions filed on January 24, 2019, and in the declaration, Rimboym generally states that he is a named inventor of the '834 Patent, a "founding partner" of Defendant, and that he left Plaintiff to work as Defendant's CEO. (R. 81-1, Rimboym Decl. at 1.) Plaintiff also attaches as exhibits to the motion to dismiss documents from the '843 Patent's file history, which appear to include a declaration and power of attorney signed by Rimboym and Etinger, (R. 81-2, Decl. & Power of Att'y), a document in which Rimboym and Etinger assign the rights to the '843 Patent to "Dresser, Inc.," (R. 81-3 at 4, Assignment), and interrogatory responses, (R. 41-1, Interrog. Resps.). (*See* R. 81, Mot. at 5-6.)

In response, Defendant argues that the Court should deny Plaintiff's motion to dismiss because Valpres, instead of Defendant, manufactures the allegedly infringing product, and because Rimboym is not involved with Valpres' manufacturing operations. (R. 84, Resp. at 4-6.) Thus, according to Defendant, it is not estopped from asserting its counterclaim of invalidity because even if Valpres' products did infringe, it would not be because of Rimboym's knowledge or expertise. (*Id.* at 4-7.) Defendant also argues that whether the issue of estoppel applies is too factual for the Court to resolve on a motion to dismiss. (*Id.* at 7-8.) Plaintiff replies that the issue is appropriate for resolution at the pleading stage because the relevant case law "universally holds" that estoppel applies "solely by virtue of the fact that [Rimboym] is the founder and CEO of the defendant company." (R. 85, Reply at 1-2, 7-9.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the sufficiency of a complaint, courts must accept the well-pleaded facts in the complaint as true but need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018). Courts "may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

"Generally, affirmative defenses do not justify dismissal under Rule 12(b)(6)." *John K. Maciver Inst. for Pub. Policy v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (citation and alteration omitted). "Nevertheless, a plaintiff may plead itself out of court by admitting all the ingredients of an impenetrable defense in a complaint." *Id.* (internal quotations and alterations omitted). Affirmative defenses, however, are often not resolved on a motion to dismiss because "a complaint need not anticipate and overcome affirmative defenses[.]" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quotation omitted); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses."). Thus,

7

"dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the [affirmative] defense[.]" *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

## ANALYSIS

Plaintiff argues that because Rimboym was an inventor of the '843 Patent, assigned the patent to Plaintiff, and then co-founded Defendant and served as its CEO, Defendant is barred under the patent law doctrine of "assignor estoppel" from maintaining that the '843 Patent is invalid. (R. 81, Mot. at 1-2.) Defendant concedes that it was co-founded by Rimboym, and that Rimboym is its CEO as well as an inventor of the '843 Patent. (R. 84, Resp. at 2-3, 5.) Defendant, however, disputes that it designs, manufactures, or sells a product that infringes the '843 Patent. (*Id.*; *see also* R. 62, Third-Party Compl. ¶¶ 4-27; R. 71, Answer at 3-9.) Thus, the Court must determine whether, under these circumstances, the Court can decide at the pleading stage that the factual allegations in Defendant's counterclaim unambiguously establish all the elements of assignor estoppel such that the Court must bar Defendant's claim of invalidity. *See Hyson USA, Inc.*, 821 F.3d at 939.

"Assignor estoppel prevents a party who assigns a patent to another from later challenging the validity of the assigned patent." *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 801 (Fed. Cir. 2018) (quotation omitted).[1] This doctrine aims to prevent the unfairness caused by the assignor of a patent "sell[ing] something and later assert[ing] that what was sold is

---

[1] The case law developed by the U.S. Court of Appeals for the Seventh Circuit governs matters related to federal civil procedure, but the case law from the U.S. Court of Appeals for the Federal Circuit governs the Court's analysis of substantive patent law. *See Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues."); *Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 899 (N.D. Ill. 2013) ("Federal Circuit law governs issues of substantive patent law.").

8

worthless, all to the detriment of the assignee." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1167 (Fed. Cir. 2005) (quotation omitted). "Application of the doctrine [of assignor estoppel] is a matter requiring a balancing of the equities and is within the sound discretion of the trial court." *Checkpoint Sys., Inc. v. All-Tag Sec. Am., Inc.*, 412 F.3d 1331, 1337 (Fed. Cir. 2005) (internal quotations omitted).

"Parties in privity with the assignor are also barred from challenging validity." *Id.* at 1336. "Privity may be established where there is a close relationship among the relevant parties, such as where the ultimate infringer availed itself of the inventor's knowledge and assistance to conduct infringement." *Id.* at 1336-37 (internal quotation omitted). "Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities." *MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1380 (Fed. Cir. 2016). "If an inventor assigns his invention to his employer company A and leaves to join company B, whether company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and company B in light of the act of infringement." *Id.* (quoting *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990)). "The closer that relationship, the more the equities will favor applying the doctrine to company B." *Id.* (quoting *Shamrock Techs., Inc.*, 903 F.2d at 793). Factors to be considered in weighing the equities include "(1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused

product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation." *Id.* Assignor estoppel typically applies in cases involving "close financial relationships in which the actual assignor almost envelopes" the infringing entity claiming that the patent at issue is invalid. *Earth Res. Corp. v. United States*, 44 Fed. Cl. 274, 286 (1999); *see also, e.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1379 (Fed. Cir. 1998) (affirming application of assignor estoppel against alleged infringer's claim of invalidity where the entity that assigned the patent owned all of the alleged infringer's stock, approved the alleged infringer's budget, and controlled the alleged infringer's operations).

Assignor estoppel is an affirmative defense, *Semiconductor Energy Laboratory Co. v. Nagata*, 706 F.3d 1365, 1370 (Fed. Cir. 2013), and therefore, for Plaintiff to prevail on a motion to dismiss, the allegations in Defendant's counterclaim must "unambiguously establish all the elements of the defense[.]" *Hyson USA, Inc.*, 821 F.3d at 939. The Court concludes that Plaintiff fails to satisfy this high burden for establishing an affirmative defense at the pleading stage.

Whether the equities favor application of assignor estoppel in this case is a fact-bound inquiry, and the pleadings and documents outside the pleadings properly considered on a motion to dismiss do not unambiguously establish assignor estoppel. *See GemShares LLC v. Lipton*, No. 17 C 6221, 2018 WL 827962, at *2 (N.D. Ill. Feb. 11, 2018) (order on a motion to dismiss, observing that an estoppel defense to invalidity "may depend on factual disputes that cannot be adjudicated at this point"); *Schultz v. iGPS Co. LLC*, No. 10 C 71, 2011 WL 37839, at *3 (N.D. Ill. Jan. 3, 2011) (deciding that a consideration of the equities relevant to the assignor estoppel defense was "not a question the Court can resolve on a motion to dismiss"). More specifically, to resolve whether Rimboym is in privity with Defendant such that the doctrine applies against Defendant, the Court must weigh factors such as the "assignor's ownership stake in the

defendant company," "whether the inventor was hired to start the infringing operations," "whether the decision to manufacture the infringing product was made partly by the inventor," and "whether the inventor was in charge of the infringing operation." *See MAG Aerospace Indus., Inc.*, 816 F.3d at 1380. There are no allegations in Defendant's counterclaim, (*see* R. 71, Countercl. at 16-19), or uncontested facts before the Court that would allow the Court to properly weigh these factors and find that assignor estoppel unambiguously applies.

Plaintiff argues it is undisputed that: Rimboym is an inventor named on the '843 Patent; he assigned the '843 Patent to Plaintiff; and he founded Defendant and serves as Defendant's CEO. (R. 81, Mot. at 2.) These facts, however, would only permit the Court to weigh some of the factors it must consider in deciding whether assignor estoppel applies but not to find that the doctrine unambiguously applies to bar Defendant's claim of invalidity. *See MAG Aerospace Indus., Inc.*, 816 F.3d at 1380.

Plaintiff relies heavily on *Diamond Scientific Co. v. Ambico, Inc.*, 666 F. Supp. 163, 165 (S.D. Iowa 1987) and *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220 (Fed. Cir. 1988), but those cases were not decided employing the legal standard applicable to affirmative defenses on a motion to dismiss. *See Diamond Sci. Co.*, 666 F. Supp. at 167 (granting motion to strike affirmative defense of assignor estoppel); *Diamond Sci. Co.*, 848 F.2d at 1227 (affirming decision in *Diamond Sci. Co.*, 666 F. Supp. at 163). Notably, the U.S. Court of Appeals for the Federal Circuit observed in *Diamond Scientific* that "when a plaintiff raises an equitable challenge to a defense, such as assignor estoppel, a court ought to have a bit more latitude to consider materials beyond the pleadings, *particularly if they present uncontested factual*

*matters." Diamond Sci. Co.*, 848 F.2d at 1227 (emphasis added).[2] Many of the factors described above that the Court must weigh to decide the issue of assignor estoppel and privity in the context of assignor estoppel do not present uncontested factual matters, and therefore the Court finds that the *Diamond Scientific* cases are readily distinguishable.

The Court also finds Plaintiff's other cited authorities unpersuasive. Most of those cases were decided after the pleading stage, where the Court is allowed to consider facts outside of the allegations and is not required to accept all well-pleaded facts as true. (*See* R. 81, Mot. at 8 (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1575 (Fed. Cir. 1993) (vacating district court's decision on summary judgment that assignor estoppel did not apply); *Nortel Networks Inc. v. Foundry Networks, Inc.*, No. 01-CV-10442-DPW, 2003 WL 26476584, at *11 (D. Mass. Mar. 24, 2003) (deciding assignor estoppel issue on summary judgment and noting that "discovery is complete"); *Am. Fence Co. v. MRM Sec. Sys., Inc.*, 710 F. Supp. 37, 38 (D. Conn. 1989) (deciding issue of assignor estoppel at summary judgment stage and "[b]ased on the full record of [the] case").)

Plaintiff also cites *Hexcel Corp. v. Advanced Textiles, Inc.*, 716 F. Supp. 974 (W.D. Tex. 1989), *aff'd*, 960 F.2d 155, an out-of-circuit case deciding assignor estoppel on a motion to dismiss, but that case applied assignor estoppel where it was "undisputed" that the inventor assigned the rights to his patent to the plaintiff's predecessor in interest and formed a new company that manufactured infringing products. *See Hexcel*, 716 F. Supp. at 977. The same factual scenario was present in *Saint-Gobain Performance Plastics Corp., HCM Division v. Truseal USA, Inc.*, 351 F. Supp. 2d 290, 292-93 (D.N.J. 2005), the only other case cited by

---

[2] Notwithstanding, the Court notes that it follows Seventh Circuit procedural law, which imposes on Plaintiff the burden to unambiguously establish all elements of the affirmative defense. *Hyson USA, Inc.*, 821 F.3d at 939.

12

Plaintiff that was decided at the pleading stage. (*See* R. 81, Mot. at 8.) In *Saint Gobain*, there was also no dispute that the inventor was in privity with the defendant such that the doctrine of assignor estoppel was applicable to the defendant and not just the inventor. *Saint-Gobain*, 351 F. Supp. at 295 n.5.

That *Saint Gobain* and *Hexcel* are out-of-circuit cases is significant, because the Court must follow Seventh Circuit procedural law, *Research Corp. Technologies v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008), which imposes a more exacting burden on Plaintiff to establish assignor estoppel than the burden imposed in *Diamond Scientific* that *Saint Gobain* and *Hexcel* followed. *See Saint-Gobain*, 351 F. Supp. 2d at 293-95; *Hexcel*, 716 F. Supp. at 976-77. *Diamond Scientific* did not impose a burden to unambiguously establish all elements of the affirmative defense, which is what the Seventh Circuit requires for affirmative defenses like assignor estoppel. *Hyson USA, Inc.*, 821 F.3d at 939. *Saint Gobain* and *Hexcel*, therefore, are not persuasive.

Additionally, unlike *Saint-Gobain* and *Hexcel*, it is disputed and unclear whether Defendant manufactures infringing products and whether Rimboym played a key role in any infringing operation or decision to manufacture infringing products. (*See* R. 84, Resp. at 1-2, 6.) Defendant alleges that it lacks any role in manufacturing infringing products and that such products are manufactured by Valpres, who allegedly warranted to Defendant that its products would not infringe any patent. (R. 62, Third-Party Compl. ¶¶ 4, 8-27; R. 71, Answer at 5-9, 15-16.) Thus, the Court declines to resolve the privity issue on a motion to dismiss. *See MAG Aerospace Indus., Inc.*, 816 F.3d at 1380; *Checkpoint Sys., Inc.*, 412 F.3d at 1337. A clearer factual picture related to the sale and manufacturing of infringing products, as well as Rimboym's ownership stake in and precise duties for Defendant, is necessary because some of

the factors the Court must weigh in the assignor estoppel and privity analysis include "whether the inventor was hired to start the infringing operations," "whether the decision to manufacture the infringing product was made partly by the inventor," and "whether the inventor was in charge of the infringing operation." *See MAG Aerospace Indus., Inc.*, 816 F.3d at 1380; *see also Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991) (observing that, for purposes of assignor estoppel, "[w]hat is significant is whether the ultimate infringer availed itself of the inventor's knowledge and assistance to conduct infringement" (internal quotation omitted)). Accordingly, the Court concludes that *Hexcel* and *Saint-Gobain* are inapposite. At bottom, the weight of more recent and controlling authority favors deciding the issue of assignor estoppel after the pleading stage, where the Court can better weigh the equities to decide whether assignor estoppel applies. *See, e.g., MAG Aerospace Indus., Inc.*, 816 F.3d at 1379-81 (affirming application of assignor estoppel at summary judgment stage, where the district court considered facts outside the pleadings to weigh all factors relevant to the assignor estoppel analysis); *Shamrock Techs., Inc.*, 903 F.2d at 794 (affirming summary judgment decision related to assignor estoppel and privity for purposes of assignor estoppel and observing that "no genuine issue of material fact exists regarding privity"); *GemShares LLC*, 2018 WL 827962, at *2; *Schultz*, 2011 WL 37839, at *3.

Relying on *Diamond Scientific* and related cases, Plaintiff argues that the Court need not weigh factors to decide whether Defendant is in privity with Rimboym because Rimboym was the founder and CEO of Defendant. (R. 85, Reply at 5-6.) *Diamond Scientific*, however, has little discussion regarding privity and cites *Stubnitz-Greene Spring Corp. v. Fort Pitt Bedding Co.*, 110 F.2d 192 (6th Cir. 1940) as an example where privity exists between an inventor and another entity. *Diamond Sci. Co.*, 848 F.2d at 1224. In *Stubnitz-Greene*, similar to *Diamond Scientific*,

the inventor was the other entity's "principal stockholder, president and general manager," and the inventor played a central role in the manufacture and sale of an infringing product. *See Greene Spring Corp.*, 110 F.2d at 195. Here, on the other hand, the only undisputed facts before the Court are that Rimboym was a founder and CEO of Defendant, and there are no undisputed facts before the Court regarding Rimboym's ownership of Defendant or his role in manufacturing and selling infringing products. *Cf. Mentor Graphics Corp.*, 150 F.3d at 1379.

Ultimately, Defendant raises a factual dispute concerning whether it availed itself of Rimboym's knowledge. (R. 84, Resp. at 2-3, 5; *see also* R. 62, Third-Party Compl. ¶¶ 4-27; R. 71, Answer at 3-9.) Thus, the Court cannot decide assignor estoppel at the pleading stage because the Federal Circuit requires courts to determine whether the infringer availed itself of the inventor's knowledge. *See Intel Corp.*, 946 F.2d at 839; *cf. Mentor Graphics Corp.*, 150 F.3d at 1379 (focusing on whether infringer availed itself of inventor's knowledge, not the corporate title of the inventor); *BASF Corp. v. Aristo, Inc.*, 872 F. Supp. 2d 758, 775 (N.D. Ind. 2012), *on reconsideration in part*, No. 2:07 CV 222 PPS, 2012 WL 2420999 (N.D. Ind. June 26, 2012) ("The question I must answer is whether [the defendant] availed itself of [the inventor's] knowledge and assistance to build the [infringing product]. And when I consider *the undisputed facts* regarding [the defendant's] relationship with [the inventor], it leads to no other conclusion than the two were in privity. (emphasis added)). The Federal Circuit also has repeatedly held, including in *Diamond Scientific*, that issues of assignor estoppel and privity require a balancing of the equities, which is an analysis that is too factual to decide on the pleadings. *See MAG Aerospace Indus., Inc.*, 816 F.3d at 1380; *Checkpoint Sys., Inc.*, 412 F.3d at 1337; *Diamond Sci. Co.*, 848 F.2d at 1222-1225, 1227 (undisputed facts showing that the inventor, who assigned the patent at issue to the plaintiff, was the founder and vice-president of a company whose purpose

was to manufacture and sell an infringing product). The Court, therefore, rejects Plaintiff's arguments and denies Plaintiff's motion to dismiss Defendant's counterclaim of invalidity.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss (R. 81) is DENIED. The parties shall appear for a status hearing on August 6, 2019, at 9:45 a.m. The parties are DIRECTED to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Judge Rubén Castillo**
**United States District Court**

**Dated: July 16, 2019**